**Burrell Issac GANDY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 37140.**

Court of Criminal Appeals of Texas.

Oct. 28, 1964.

Rehearing Denied Jan. 6, 1965.

Dunnam, Dunnam & Dunnam, by W. V. Dunnam, Jr., Waco, for appellant.

Charles H. Bolton, County Atty., Meridian, and Leon B. Douglas, State's Atty., Austin, for the State.

WOODLEY, Presiding Judge.

The offense is driving while intoxicated; the punishment, 60 days in jail and a fine of $50.

James A. Wright, Texas Highway Patrolman, testified that he observed the appellant driving a pickup truck on a public highway in Meridian, Bosque County, about 7:35 at night. He noticed that the tail light was not burning. The appellant was driving "exceptionally slow" and made "an exceptionally wide turn" at an intersection. He stopped the appellant who appeared to be intoxicated. He asked the appellant to get out of his vehicle and he did so. He observed the appellant closely, and observed that he smelled strongly of intoxicants, his speech was impaired, he slurred his words as he talked. He swayed as he walked. In his opinion, the appellant was intoxicated.

Deputy Sheriff and Jailer Charles Buckingham, who was in the patrol car with Patrolman Wright, gave similar testimony.

The appellant testified that he was not intoxicated and that he drank nothing at all that day except two bottles of beer which he drank in the morning.

Defense witness J. L. Mantooth testified, as did the appellant, that they went fishing that day and were together from about 11:30 A.M. until about 7 P.M. and that they had no alcoholic beverages with them and the appellant consumed none and had none in his possession.

Mr. Mantooth testified further that he followed the appellant's pickup as it was being driven to the jail by the deputy sheriff and observed the appellant and talked to him and that he was sober.

Ranchman Fred Wright, called by the defense, testified that he saw the appellant about sundown at which time he was in company of Mr. Mantooth and was, in his opinion, sober.

Defense witness James E. Long testified that he saw the appellant at the sheriff's office and that he was sober.

Each of the witnesses testified to their observation of the appellant and the facts upon which they based their opinion as to his being intoxicated or sober at the time they observed him.

The appellant also called Clark Royal, former Liquor Control Board Agent, and former Sheriff of Bosque County. Mr. Royal did not see the appellant at the time he was allegedly intoxicated. He went to the sheriff's office about 8:30 the following morning and signed the appellant's bond. When asked "whether or not a man who has been drunk the night before has some visible showings of it at 8:00 or 8:30 the next morning," he testified, over objection, that he could tell; "You can tell more by the scent. You let a person get drunk the night before on beer; you can smell him 10 feet away for 24 hours after he's sobered up unless you let him take a bath." He said that he "couldn't smell a thing on him that morning." Mr. Royal also attested the good reputation of the appellant for truth and veracity.

Sherill Benson, a farmer, over objection was also permitted to testify that the ap-

pellant's general reputation in the community for truth and veracity was good, though appellant's truthfulness or veracity had not been made an issue.

There is one formal bill of exception. It relates to the overruling of appellant's motion for mistrial when the jury, during its deliberations, sent a note to the court inquiring about the refusal of defendant to submit to a blood test.

It is appellant's contention that his formal bill "shows affirmatively that the jury considered whether or not the defendant refused to take a blood test."

■ No motion for new trial was filed and the question of jury misconduct is not before us.

The record shows that on cross-examination Patrolman Wright was interrogated as to the steps leading to the court house and was asked and answered:

"Q. * * * how many steps is there up and down that * * * out here into this court house here?

"A. I believe there's 4 or 5.

"Q. 4 or 5. You don't know, do you?

"A. Not for sure.

"Q. Approximately how high a steps does a man have to climb to get up there?

"A. About so high I guess (indicating with hands height)

"Q. You could be wrong about that? Couldn't you?

"A. I never have measured them.

"Q. You could be wrong in that? Couldn't you?

"A. I've never measured them, I wouldn't know.

"Q. You didn't measure the amount of alcohol, if any, that this old man had drunk either, did you?

"A. No."

On re-direct examination by the County Attorney, Patrolman Wright was asked and answered:

"Q. Counsel asked you if you measured * * * this was his question to you; 'Did you measure the amount of alcohol in this man?' and my question is, did you have opportunity to do that?

"A. No sir, he wouldn't let me."

■ We are unable to agree with the appellant's contention that the question directed to the witness by appellant's counsel did not relate to the question of a measure of the alcohol content of appellant's blood.

We see no material difference between the question propounded to the witness Wright by appellant's counsel shown by the record, "You didn't measure the amount of alcohol, if any, that this old man had drunk," and the county attorney's version of the question, "Did you measure the amount of alcohol in this man?" or the court's reference to the question as being "whether or not this witness measured the alcohol content of his person."

We are aware of no method other than one relating to the alcohol content in his blood which the witness who had not seen the appellant drinking could use to measure the alcohol he had consumed.

We overrule appellant's contention that the court should have granted his motion for mistrial.

■ We see no error in the communication between the court and jury. The note from the jury inquired "Did Officer Wright ask Gandy to submit to a blood test and if so did he refuse?"

The court, having overruled appellant's motion for mistrial based upon the note, in-

structed the jury in writing: "You must not consider in your deliberations whether the defendant was requested to submit to a blood test by Officer Wright or whether or not he did submit to a blood test."

There is no evidence that the jurors violated the court's instruction.

■ Appellant's complaint that he was not furnished a copy of the information is not before us. There is no formal bill of exception relating to such matter and the motion is not one of the motions included or referred to in Art. 760e, Vernon's Ann. C.C.P. relating to informal bills.

■ The error, if any, in the exclusion of testimony of the witness Mantooth to the effect that he was under doctor's orders not to drink any alcoholic beverages is not such as would warrant reversal.

■ The remaining ground for reversal relates to re-cross examination of Ex-Sheriff Clark Royal wherein he was asked, and answered: "Q. Do you recall the time while you were Sheriff, while you were on the payroll of the County, charged with enforcing the law that another officer had jailed one charged with DWI and you came down before breakfast and released that man, do you remember that? A. No sir, I sure don't."

The trial court sustained appellant's objection and instructed the jury not to consider the testimony and no motion for mistrial was made.

While the question should not have been asked, the error, in view of the witness' testimony and the record, is not ground for reversal.

The evidence is sufficient to sustain the jury's verdict and we find no reversible error.

The judgment is affirmed.